# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | **CRIMINAL COMPLAINT** |
| | : | |
| v. | : | The Honorable Joseph A. Dickson, U.S.M.J. |
| | : | |
| MILTON SCHULTZ, | : | Mag. No. 14-6773 |
|     a/k/a "Junior Schultz," | : | |
| LYNVAL CARL EDWARDS, | : | |
|     a/k/a "Ricky," | : | |
| ONEIL GARTH LINTON, | : | |
|     a/k/a "Popcorn," | : | |
| ANDREW LLOYD STEER, | : | |
|     a/k/a "Dre" | : | |

I, the undersigned complainant, being duly sworn, state the following is true and correct to the best of my knowledge and belief.

### SEE ATTACHMENT A

I further state that I am a Special Agent with the Department of Homeland Security, Homeland Security Investigations, and that this complaint is based on the following facts:

### SEE ATTACHMENT B

continued on the attached page and made a part hereof.

Ricky Miller, Special Agent
Department of Homeland Security,
Homeland Security Investigations

Sworn to before me and subscribed in my presence,
October 15, 2014 at Newark, New Jersey

HONORABLE JOSEPH A. DICKSON
UNITED STATES MAGISTRATE JUDGE                Signature of Judicial Officer

## ATTACHMENT A

### Conspiracy to Distribute Cocaine

From in or about September 2014 through in or about October 14, 2013, in Essex County, in the District of New Jersey and elsewhere, defendants

MILTON SCHULTZ,
a/k/a "Junior Schultz",
LYNVAL CARL EDWARDS,
a/k/a "Ricky,"
ONEIL GARTH LINTON,
a/k/a "Popcorn,"
ANDREW LLOYD STEER,
a/k/a "Dre",

did knowingly and intentionally conspire and agree with others, known and unknown, to distribute, and to possess with intent to distribute, a quantity of cocaine, a Schedule II controlled substance, contrary to Title 21, United States Code, Sections 841(a) and 841 (b)(1)(C).

In violation of Title 21, United States Code, Section 846.

## ATTACHMENT B

I, Ricky Miller, am a Special Agent with the Department of Homeland Security, Homeland Security Investigations ("HSI"). I am fully familiar with the facts set forth herein based on my own investigation, my conversations with law enforcement officers and others, and my review of reports, documents, and items of evidence. Where the statements of others are related herein, they are related in substance and part. Because this complaint is being submitted for a limited purpose, I have not set forth each and every fact that I know concerning this investigation. The conversations discussed herein were recorded and monitored by HSI via audio recording and a social networking application.

1. In September 2014, HSI agents received information from a Confidential Source ("CS") that an individual had connections to a cocaine supplier in the metropolitan area. The individual, later identified as ANDRE LLOYD STEER ("STEER"), informed CS that he could introduce CS to a cocaine supplier. Thereafter, STEER introduced CS to ONEIL GARTH LINTON, a/k/a "Popcorn," ("LINTON").

2. In or about late September 2014, STEER and LINTON told CS that they could arrange to provide CS with approximately 1 kilogram of cocaine from an undisclosed supplier. STEER and LINTON told CS that they would obtain the cocaine for $36 per gram, and sell it to CS for approximately $38 per gram. STEER and LINTON told CS that they would earn $1,000 each from the transaction. Thereafter, STEER and LINTON told CS to meet them at a location in East Orange (the "East Orange location"), to effectuate the transaction.

3. On or about October 9, 2014, under HSI's supervision, CS arrived at the East Orange location, a multi-story private residence. STEER and LINTON arrived at the location in a Honda Pilot bearing New Jersey license plate, accompanied by an unidentified male in the vehicle. The Honda Pilot is registered to LINTON's spouse. CS entered the Honda Pilot and discussed buying approximately 1kilogram of cocaine from LINTON and STEER. LINTON and STEER told CS that they could obtain the cocaine that evening from a supplier. CS exited the vehicle, and LINTON, STEER, and the unidentified male drove away from the vicinity to pick up the cocaine. LINTON and STEER were unable to obtain the cocaine that evening.

4. On or about the morning of October 10, 2014, LINTON told CS that he had contacted his supplier, and that he was prepared to provide CS with the cocaine. CS and LINTON arranged to meet the same day at a location in South Orange, New Jersey, so that LINTON could provide CS with the cocaine. LINTON did not arrive at the agreed-upon location.

5. From on or about October 11, 2014 through on or about October 13, 2014, LINTON contacted CS and reiterated that he remained interested in selling CS the kilogram of cocaine. CS and LINTON arranged to meet in South Orange, New Jersey, on October 14, 2014.

6. On or about October 14, 2014, HSI conducted surveillance at the East Orange location. Agents observed the Honda Pilot parked at the location. Agents also observed STEER, LINTON, a female, and two men later identified as MILTON SCHULTZ ("SCHULTZ") and LYNVAL CARL EDWARDS, a/k/a "Ricky" ("EDWARDS") in front of the location. Agents observed the defendants and the female leave the location in the Honda Pilot, the Murano, and the Land Rover. Agents followed the three vehicles to the South Orange location, the parking lot of a pharmacy.

7. The same day, under HSI's supervision, CS arrived at the South Orange location. Sometime thereafter, the three vehicles arrived simultaneously. STEER arrived driving the Honda Pilot; O'NEILL arrived in the Land Rover driven by the same female observed by agents in front of the East Orange location; and the Nissan Murano arrived, occupied by EDWARDS and SCHULTZ. CS entered the Honda Pilot. ONEILL then exited the passenger side of the Land Rover and entered the Honda Pilot. CS, STEER, and ONEILL discussed a transfer of money in exchange for the cocaine. CS responded that he wanted to see the cocaine first. ONEILL repeatedly stated "it's here," referring to the cocaine, but that he needed to see the money first. CS exited the Honda Pilot, and agents arrested the defendants.

8. Law enforcement obtained consents from the defendants to search the Murano, the Honda Pilot, and the Land Rover. A search of the vehicles resulted in the recovery of approximately 500 grams of a white, powdery substance that field tested positive for the presence of cocaine, and a machete, in the Murano. In the Land Rover, agents recovered approximately 500 grams of a white, powdery substance that did not test positive for cocaine, and a knife in the Honda Pilot.